## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEWIS D. BAKER,                              ) | |
|                              ) | |
|         Plaintiff,                    ) | |
|                              )     Case No. _____ | |
|    v.                                   ) | |
|                              )     JURY TRIAL DEMANDED | |
| ZYNGA INC., MARK PINCUS, FRANK ) | |
| GIBEAU, REGINA E. DUGAN, WILLIAM ) | |
| GORDON, LOUIS J. LAVIGNE JR.,      ) | |
| CAROL G. MILLS, JANICE M. ROBERTS, ) | |
| ELLEN F. SIMINOFF, and NOEL         ) | |
| WATSON,                                  ) | |
|                              ) | |
|         Defendants.                  ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on January 10, 2022 (the "Proposed Transaction"), pursuant to which Zynga Inc. ("Zynga" or the "Company") will be acquired by Take-Two Interactive Software, Inc. ("Take-Two"), Zebra MS I, Inc. ("Merger Sub I"), and Zebra MS II, Inc. ("Merger Sub II").

2. On January 9, 2022, Zynga's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an Agreement and Plan of Merger (the "Merger Agreement") with Take-Two, Merger Sub I, and Merger Sub II. Pursuant to the terms of the Merger Agreement, Zynga's stockholders will receive $6.36 in shares of Take-Two common stock and $3.50 in cash for each share of Zynga common stock they own.

3.     On March 14, 2022, defendants filed a registration statement (the "Registration Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.     The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Zynga common stock.

9.     Defendant Zynga is a Delaware corporation and a party to the Merger Agreement. Zynga's common stock is traded on the NASDAQ under the ticker symbol "ZNGA."

10.     Defendant Mark Pincus is Founder and Chairman of the Board of the Company.

11.     Defendant Frank Gibeau is Chief Executive Officer and a director of the Company.

12.     Defendant Regina E. Dugan of the Company.

13.     Defendant William Gordon is a director of the Company.

14.     Defendant Louis J. Lavigne Jr. is a director of the Company.

15.     Defendant Carol G. Mills is a director of the Company.

16.     Defendant Janice M. Roberts is a director of the Company.

17.     Defendant Ellen F. Siminoff is a director of the Company.

18.     Defendant Noel Watson is a director of the Company.

19.     The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

20.     Zynga is a global leader in interactive entertainment with a mission to connect the world through games.

21.     With massive global reach in more than 175 countries and regions, Zynga has a diverse portfolio of popular game franchises that have been downloaded more than four billion times

22.     On January 9, 2022, Zynga's Board caused the Company to enter into the Merger Agreement.

23.     Pursuant to the terms of the Merger Agreement, Zynga's stockholders will receive $6.36 in shares of Take-Two common stock and $3.50 in cash per share.

24.     According to the press release announcing the Proposed Transaction:

Take-Two Interactive (NASDAQ: TTWO) (the "Company") and Zynga (NASDAQ: ZNGA), two leaders in interactive and mobile entertainment, today

announced that they have entered into a definitive agreement, under which Take-Two will acquire all of the outstanding shares of Zynga in a cash and stock transaction valued at $9.86 per Zynga share, based on the market close as of January 7, 2022, with a total enterprise value of approximately $12.7 billion. Under the terms and subject to the conditions of the agreement, Zynga stockholders will receive $3.50 in cash and $6.36 in shares of Take-Two common stock for each share of Zynga common stock outstanding at the closing of the transaction. The purchase price represents a premium of 64% to Zynga's closing share price on January 7, 2022. . . .

At the close of the transaction, Strauss Zelnick will continue to serve as Chairman and CEO, and the management team of Take-Two will continue to lead the combined company. Zynga's highly skilled and proven management team, led by Frank Gibeau and Zynga's President of Publishing, Bernard Kim, will drive the strategic direction for Take-Two's mobile efforts and will oversee the integration, and day-to-day operations of the combined Zynga and T2 Mobile Games business, which will operate under the Zynga brand as its own label within the Company. Additionally, Take-Two will expand its Board of Directors to 10 members upon the closing of the transaction to add two members from Zynga's Board of Directors.

Terms of the Acquisition

Zynga stockholders will receive $3.50 in cash and $6.36 in shares of Take-Two common stock for each share of Zynga common stock outstanding at the closing. The transaction is valued at $9.86 per share of Zynga common stock based on the market closing as of January 7, 2022, implying an enterprise value of approximately $12.7 billion.

The transaction includes a collar mechanism on the equity consideration, so that if Take-Two's 20-day volume weighted average price ("VWAP") ending on the third trading day prior to closing is in a range from $156.50 to $181.88, the exchange ratio would be adjusted to deliver total consideration value of $9.86 per Zynga share (including $6.36 of equity value based on that VWAP and $3.50 in cash). If the VWAP exceeds the higher end of that range, the exchange ratio would be 0.0350 per share, and if the VWAP falls below the lower end of that range, the exchange ratio would be 0.0406 per share.

Within the collar range, the final number of Take-Two shares estimated to be issued on a fully diluted basis will range between approximately 50.3 million and 58.5 million shares. Upon closing of the transaction, current Take-Two stockholders will own between 67.2% and 70.4% and current Zynga stockholders are expected to own between 29.6% and 32.8% of the combined company on a fully diluted basis, respectively, including the shares associated with expected settlement of Zynga's two outstanding series of convertible notes due 2024 and 2026.

As part of the transaction, Take-Two has received committed financing of $2.7 billion from J.P. Morgan and intends to fund the cash component of the transaction through a combination of cash from its balance sheet as well as proceeds of new debt issuance. . . .

Approvals and Close Timing

The transaction, which is expected to be completed during the first quarter of Take-Two's Fiscal Year 2023, ending June 30, 2022, is subject to the approval of both Take-Two and Zynga stockholders and the satisfaction of customary closing conditions, including applicable regulatory approvals.

The transaction has been unanimously approved by the Take-Two and Zynga Boards of Directors. Moreover, each director and executive officer of Take-Two and Zynga have entered into voting agreements to support the transaction.

Advisors

J.P. Morgan and LionTree Advisors are serving as financial advisors to Take-Two and Willkie Farr & Gallagher LLP is serving as legal counsel. Goldman Sachs & Co. LLC is acting as financial advisor to Zynga and Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as legal counsel.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

25. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

26. As set forth below, the Registration Statement omits material information.

27. First, the Registration Statement omits material information regarding the Company's, Take-Two's, and the combined company's financial projections.

28. The Registration Statement fails to disclose: (i) all line items used to calculate the financial projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

29. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

30.     Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs").

31.     With respect to Goldman Sachs' Illustrative Present Value of Future Stock Price Analysis – Zynga Standalone, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rate and multiples used in the analysis; (ii) the net debt used in the analysis; and (iii) the number of fully diluted shares outstanding used in the analysis.

32.     With respect to Goldman Sachs' Illustrative Pro Forma Present Value of Future Stock Price Analysis – Combined Company, the Registration Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rate and multiples used in the analysis; (ii) the net debt used in the analysis; and (iii) the number of fully diluted shares outstanding used in the analysis.

33.     With respect to Goldman Sachs' Illustrative Discounted Cash Flow Analysis – Zynga Standalone, the Registration Statement fails to disclose: (i) the terminal values used in the analysis; (ii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; (iii) the net debt used in the analysis; and (iv) the number of fully diluted shares outstanding used in the analysis.

34.     With respect to Goldman Sachs' Illustrative Discounted Cash Flow Analysis – Combined Company, the Registration Statement fails to disclose: (i) the terminal values used in the analysis; (ii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; (iii) the net debt used in the analysis; and (iv) the number of fully diluted shares outstanding used in the analysis.

35.     With respect to Goldman Sachs' Selected Precedent Transactions Analysis, the Registration Statement fails to disclose: (i) the closing dates for the transactions; (ii) the total values of the transactions; (iii) the net debt used in the analysis; and (iv) the number of fully diluted shares outstanding used in the analysis.

36.     With respect to Goldman Sachs' Premia Analysis, the Registration Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

37.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38.     The omission of the above-referenced material information renders the Registration Statement false and misleading.

39.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Zynga**

40.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

41.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  Zynga is liable as the issuer of these statements.

42.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

43.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

44.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

45.     The Registration Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

46.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

47.     Because of the false and misleading statements in the Registration Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

48.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of Zynga within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Zynga and participation in and/or awareness of the Company's operations

and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.   The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.   They were thus directly involved in the making of the Registration Statement.

52.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.   As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: March 18, 2022                          **RIGRODSKY LAW, P.A.**

                                                    By:   */s/ Gina M. Serra*  
                                                          Gina M. Serra
                                                          825 East Gate Boulevard, Suite 300
                                                          Garden City, NY 11530
                                                          Telephone: (516) 683-3516
                                                          Email: gms@rl-legal.com

                                                          *Attorneys for Plaintiff*